## LAURA KOPPE ET AL. v. WILLIAM KOPPE.

Decided October 21, 1909.

**1.—Fraud—Procurement of Deed—Burden of Proof.**

In an action to set aside a deed upon the ground, among others, that the consideration paid was inadequate, the inadequacy of the consideration was an essential part of plaintiff's case and therefore the burden rested upon him to establish such fact. A charge in such case placing the burden upon the defendant to prove the adequacy of the consideration was reversible error.

**2.—Trial—Burden of Proof.**

While the weight of the evidence may shift from side to side during the progress of a trial a plaintiff is never relieved of the burden of proving his case by a preponderance of the evidence, and when all the evidence is in unless the jury find that the plaintiff has made out his case by a preponderance of the evidence, their verdict should be for the defendant.

**3.—Same.**

When a defendant seeks to defeat a prima facie case made by plaintiff by proof of an independent fact in avoidance of plaintiff's right of recovery, the burden is upon him to establish such fact. Rule exemplified.

**4.—Same.**

The burden does not rest upon a defendant to establish by a preponderance of the evidence the nonexistence of a fact necessary to plaintiff's recovery.

**5.—Fraud—Ratification.**

Where a party originally had a right of defense or of action to set aside or defeat a transaction on the ground of actual or constructive fraud, he may lose such remedial right by a subsequent confirmation, by acquiescence or by mere delay or laches.

**6.—Same—Ratification—Acquiescence—Definition.**

Confirmation implies a deliberate act intended to renew and ratify a transaction known to be voidable; acquiesence is some act, not deliberately intended to ratify such transaction, but recognizing the transaction as existing and intended to some extent at least, to carry it into effect and to obtain or claim the benefits resulting from it.

**7.—Voidable Contract—Ratification.**

Where, with full knowledge and understanding of all the facts, a party treated as his own property received by him in a transaction voidable for fraud, and appropriated the property to his own use and benefit by executing a mortgage thereon, he will be held to have ratified the transaction regardless of whether he knew specifically what his legal rights were, and regardless of whether he knew that the execution of the mortgage would be a ratification of the transaction.

**8.—Evidence—Value of Estate.**

In an action to set aside a deed to the grantor's interest in an estate on the ground of inadequacy of the consideration received, the issue could only be determined by ascertaining the value of the property conveyed and of that received, and in ascertaining these facts the enquiry should be as to the market value and not the instrinsic value of the property at the time of the transaction. The value of an interest in an estate can only be ascertained by ascertaining the market value of the excess over and above the indebtedness of the estate.

**9.—Value—Comparative Value—Evidence.**

The issue being as to the value of a certain tract of land, it was error to

admit testimony as to the value of other lands not shown to have been substantially identical in class, conditions and surroundings.

### 10.—Avoidance of Contract—Trust Relation—Evidence.

Where plaintiff's suit to set aside a deed is based, not upon mental incapacity to execute the deed but, upon the ground that the grantee abused and took advantage of plaintiff's trust and confidence in and reliance upon her to protect his interests, testimony as to plaintiff's mental weakness, ignorance and want of business capacity is admissible in aid of the main issue, as against an objection that the testimony involved a conclusion of law and fact.

### 11.—Same—Annulling Contract—Advice of Third Party.

Where relations of trust and confidence existed between a grantor and grantee and that confidence was abused by the grantee and the grantor defrauded, it is no defense to a suit by the grantor to annul the deed that the grantor consulted others as to the advisability of the trade before making the same and was to some extent influenced by their advice.

Appeal from the District Court of Brazos County. Tried below before Hon. J. C. Scott.

*Doremus & Butler, A. G. Board* and *Sam, Bradley & Vogel,* for appellants.

*T. R. Batte, V. B. Hudson* and *Hutcheson, Campbell & Hutcheson,* for appellee.—Any person well acquainted with party may give his opinion of his mental condition: Scalf v. Collin County, 80 Texas, 517; Houston & T. C. Ry. Co. v. Roberts, 109 S. W., 982; Galloway v. Railway Co., 78 S. W., 32; Haney v. Clark, 65 Texas, 93; Missouri, K. & T. Ry. Co. v. Brantley, 62 S. W., 96.

In making a transaction, a party may rely upon positive statements or representations made to him by the opposite party, and the party making the representations will not be permitted to say that the party to whom he made the representations should not have relied upon them. Campbell v. Kauffman Mill Co., 105 S. W., 287.

If a party to whom a false representation is made enters into a contract relying upon such representation, he is entitled to have the same set aside, though he may also rely partly on an examination or an investigation made by himself. 14 Am. & Eng. Ency. of Law, p. 114, sec. C and notes; 20 Cyc., p. 41 and authorities; Holtry v. Foley, 61 N. W., 120; 2 Pomeroy Eq., sec. 955.

In order to defeat a suit to set aside a fraudulent transaction, it must appear that the party acted solely on his own judgment, based upon independent inquiry, and not at all upon the fraudulent representations. 20 Cyc., p. 40.

If a party, where false or fraudulent representations are made, makes an investigation concerning the same, and this investigation consists in questioning persons whose information was derived from the party who made the false representations, such investigation does not amount to anything. 14 Am. & Eng. Ency. of Law, p. 112.

Where facts are peculiarly within the knowledge of a party making representations, no diligence is required of the other party to ascertain the truth. He does not have to make an independent investigation where the false statements are positively made, and he can be released

from the bargain even though there was no fraud knowingly prac-. ticed. 14 Am. & Eng. Ency. of Law, p. 120, and authorities cited, especially Labbe v. Corbett, 69 Texas, 503, and other Texas cases cited; Pom., Eq. Jur., sec. 891, 2d ed.; 2 Pom., Eq. Jur., sec. 848; Moreland v. Atcheson, 19 Texas, 303.

Where a relation of trust and confidence exists between the parties, when one makes representations to the other, the party to whom made is entitled to rely upon them, and this, where no recognized trust relation exists but merely actual confidence reposed. 14 Am. & Eng. Ency. of Law, pp. 122-3; Varner v. Carson, 59 Texas, 306; Ellis v. Mathews, 19 Texas, 397.

Where a fiduciary relation exists between a grantor and grantee the strictest fairness must be maintained, and in order for the appellants to have sustained this transaction the burden was upon them to show that a full and fair value was paid for the property to Wm. Koppe. Pomeroy, Eq. Jur., p. 483, pars. 956 and 958; Varner v. Carson, 59 Texas, 306; Goar v. Thompson, 47 S. W., 63.

PLEASANTS, Chief Justice.—This suit was brought by the appellee against the appellants, Laura Koppe, J. F. Robinson and Augusta Kurten, to recover an undivided one-half interest in the estate of William Koppe, deceased. As preliminary to such recovery it was sought to cancel a deed executed by the plaintiff to Laura Koppe on February 26, 1906, whereby plaintiff conveyed his interest in said estate to said defendant. It was further sought to cancel certain deeds from Laura Koppe to the defendants Robinson and Kurten conveying to them respectively certain portions of the lands belonging to said estate. The following paragraphs of the petition sufficiently show the grounds upon which plaintiff sought to set aside the deed by which he conveyed his interest in the estate to the defendant Laura Koppe:

"Plaintiff avers that the defendant Laura Koppe is the surviving widow of William Koppe, deceased, plaintiff's father, and that plaintiff is the child of William Koppe, deceased, by a former marriage, and is the only child descendant of the said William Koppe, deceased.

"Plaintiff avers that the defendant Laura Koppe is a shrewd, designing, far-seeing, calculating person, and she exercised over plaintiff's father a great and overwhelming influence, and plaintiff's father being conscious of the fact that plaintiff was a green, inexperienced, ignorant and uneducated fellow, whose mind was wholly undeveloped, and he knew that plaintiff was wholly incapable of protecting and taking care of the large estate to which he would be entitled upon the death of his father, and plaintiff's father being desirous of providing for and leaving him in comfortable and easy circumstances, he did often, prior to his death, communicate his said wishes to the defendant Laura Koppe, and she did then and there set about and did induce plaintiff's father to give her an equal interest in said estate with this plaintiff, and in order to secure said interest promised plaintiff's father that she would diligently and faithfully guard and protect plaintiff's every interest, and would look after his welfare generally, and plaintiff's father relying upon said promise made to him by defendant Laura Koppe, and believing that she would perform the serv-

ices promised, conscientiously and faithfully, and for the purpose of securing for plaintiff the assistance, protection and help of the said Laura Koppe in looking after and taking care of his property, plaintiff's father did, on the 11th day of November, 1902, make and publish his last will and testament, by the terms of which he bequeathed to Laura Koppe and this plaintiff an equal one-half interest each in his estate; that said will was, after the death of said William Koppe, which occurred on the —— day of ——, 1902, duly probated by the Probate Court of Brazos County, and by terms of said will, and in the manner hereinbefore alleged, the said Laura Koppe acquired an undivided one-half interest in all of the property of the said William Koppe, deceased, plaintiff's father.

"Plaintiff avers that all of the property, both real, personal and mixed, of which his father died seized and possessed, was community property between his father and this plaintiff's mother, or was the separate property of plaintiff's father, made and acquired long prior to his marriage to the defendant Laura Koppe, and no part of said property was community property between plaintiff's father and the defendant Laura Koppe.

"Plaintiff avers that immediately after the death of his father defendant Laura Koppe, in connection with Mr. Milton Parker of Brazos County, Texas, took charge of all of the estate, both real, personal and mixed, belonging to his said father's estate, and administered the same independent of the Probate Court, as by said will provided, and the said Laura Koppe being extremely avaricious and grasping in her disposition, and so unpleasant in her manner of the management of said estate, by desiring to acquire for herself the entire and absolute control and possession of said estate, did thereafter commence a course of conduct towards the said Milton Parker, in the matter of the management and conduct of said estate and the spending of money belonging thereto, which was so objectionable and annoying to the said Parker that he did thereafter file his application in the Probate Court of Brazos County, Texas, and did resign his trust as executor of said estate, which said application and resignation were filed on January 12, 1905; and plaintiff avers that after said resignation of the said Parker aforesaid, the defendant, Laura Koppe, had absolute and entire and unqualified control of all of the property belonging to the estate of William Koppe, deceased, both real, personal and mixed; and she did thereafter manage, control and dispose of said property as she saw fit, without consulting this plaintiff and without regard to his interest and welfare, and plaintiff relying all the while upon her to look after his interest, believing that she was so doing.

. . .

"Plaintiff, though of adult age, is wholly wanting in intelligence, judgment and experience qualifying him to conduct a business transaction; his mind is naturally weak and wanting in shrewdness or capacity to form a correct idea of the value of money or property or to protect himself in a trade; he has never engaged in a business transaction of any size or magnitude; that he has lived since becoming of age on his father's plantation in Burleson County, Texas, working as a common laborer, receiving pay of twenty-five ($25) dollars per

month for his services, and in addition to his lack of experience, his mind is dwarfed and undeveloped, all of which was fully known to the defendants Laura Koppe and J. F. Robinson.

"The said defendants, Laura Koppe and J. F. Robinson, knowing of plaintiff's said condition, undertook to buy from him his interest in his father's estate, and the land held in common between plaintiff and Laura Koppe, and finally persuaded and procured him to make to Laura Koppe the deed hereinbefore described, on the 26th day of February, 1906, a copy of which has been here filed in this cause, marked 'Exhibit B,' paying the plaintiff for said property the sum of $2,500 in money and giving him a deed to a tract of land belonging to said estate, worth not exceeding $5,000, and plaintiff is informed and so believes and so charges the fact to be that the price paid to him for his interest in said property is grossly inadequate, for that his interest in said estate was at that time easily worth the sum of $75,000 over and above all debts, but so it is he alleges that he, being ignorant of the matters, and having had no experience with large sums of money or trades of any magnitude, supposed at the time of the purchase that he was being paid a fair value, and especially supposed that he would not be overreached or° mistreated in said trade by his step-mother, Laura Koppe; but he alleges that he was by said Laura Koppe, aided and assisted by J. F. Robinson, grossly overreached, and his property sought to be taken from him by them for a grossly inadequate consideration; therefore he avers that no title passed by said deed, and same should be set aside and canceled and held for naught."

Other paragraphs of the petition set out specifically and fully many acts and representations of the defendants, Laura Koppe and J. F. Robinson, by which it is alleged they knowingly and fraudulently deceived plaintiff and thereby fraudulently obtained from him the conveyance of his interest in the estate of his father.

The defendants answered by general and special exceptions and general denial and by special pleas, the nature of which it is unnecessary to state here.

The trial in the court below by a jury resulted in a verdict and judgment in favor of plaintiff.

The conclusion we have reached as to the proper disposition of this appeal renders a full statement of the facts shown by the evidence unnecessary and unappropriate. It is sufficient to say that the evidence was conflicting upon the issue of fraud raised by the pleadings, and while there was ample evidence to sustain the verdict of the jury there was also evidence sufficient to sustain a finding that defendant, Laura Koppe, acted in good faith in making the trade with plaintiff. Upon this state of the evidence the trial court gave the jury the following instruction:

"If you believe from a preponderance of the evidence that at and prior to February 26, 1906, the defendant Laura Koppe occupied a position of advantage over the plaintiff, either because of the weakness of his mind or judgment which prevented him from understanding his rights or the nature and extent of the transaction in which the deeds were exchanged, if you find from a preponderance of the testimony that such a condition of mind or judgment existed: or if

you believe from a preponderance of the evidence that prior to and at said date the said Laura Koppe occupied a position of advantage over the plaintiff because of his confidence and reliance upon her, if you find that such relation of trust and confidence existed, and that at the time said deed was executed she did occupy a position of advantage over the plaintiff on account of the existence of said conditions or either of them, then you are instructed that the burden of proof is on the defendant Laura Koppe to establish by a preponderance of the evidence that the transaction of date February 26, 1906, in which the plaintiff executed his deed to her in exchange for her deed to him and the $2,500 in money, was fair and open, that no advantage was taken in the course of said trade by her, that the plaintiff understood the nature and value of his rights in the property conveyed to her, and that the consideration paid to the plaintiff was fair and adequate— that is, reasonably of the same value as the land conveyed to her— and if you have found that the conditions, or either of them above set out conferring a position of advantage on the said Laura Koppe existed, unless you so find the facts to be in regard to said transaction as submitted to you herein as to fairness and adequacy, then you will return a verdict for the plaintiff for the cancellation of said deeds of February 26, 1906."

Under an appropriate assignment of error appellant assails this charge upon the ground, among others, that it erroneously places the burden of proof on the defendant upon the issue of whether the consideration paid plaintiff for the conveyance of his interest in the Koppe estate was fair and adequate.

We think the assignment should be sustained. Unless plaintiff was injured by the transaction of which he complains, he is not entitled to have it set aside. The allegation that the consideration received by him for his conveyance of the property to the defendant was inadequate was an essential part of plaintiff's position, and proof of this allegation was necessary to his right to relief. Such inadequacy of consideration being an essential part of his case, the burden rested upon him to establish such fact by a preponderance of the evidence, and the burden of proof upon this issue could not be shifted to the defendant at any stage of the proceedings.

The authorities cited by appellee do not sustain his contention that the charge was correct. The statement of Judge Neill in the opinion in the case of Wells v. Houston, 29 Texas Civ. App., 619, that "There are certain relations of trust, such as parent and child, guardian and ward, trustee and *cestui que trust,* attorney and client, where the danger of allowing persons holding such relations with each other to deal with them is so great that the presumption ought to be and is against the transaction; and the person holding the trust or influence ought to be and is required to vindicate it from all fraud," can not be taken as a holding that in a case of this character, when the trust relation is shown and evidence has been introduced by the defendant tending to show that the transaction sought to be set aside was based on an adequate consideration, it would be proper to instruct the jury that the burden was upon the defendant to show the adequacy of the con-

sideration. No such question was before the court in the case cited, and the learned judge who wrote that opinion only announced the rule which is well settled by authority, that proof of a trust relation of this character is *prima facie* evidence of fraud in the transaction, and from which the existence of such relationship the necessary and essential fact of inadequacy of consideration might be presumed. This is but a rule of evidence under which the existence of one fact may be presumed upon proof of another, and is not in conflict with the settled rule that the burden is upon the plaintiff to make out his case by a preponderance of the evidence, and that while the weight of the evidence may shift from side to side during the progress of a trial a plaintiff is never relieved of this burden, and when all the evidence is in, unless the jury find that the plaintiff has made out his case by a preponderance of the evidence, their verdict should be for the defendant. Under the charge given by the court, above set out, if the jury were unable to determine from the evidence whether or not the consideration given plaintiff was adequate and fair, they were told to find a verdict for plaintiff, when the law is that, unless the plaintiff establishes the cause of action asserted by him by a preponderance of the evidence, the verdict should be for the defendant.

If the defendant seeks to defeat a *prima facie* case made by the plaintiff by proof of an independent fact in avoidance of the right of recovery, of course the burden is upon him to establish such fact, and the jury should be so instructed. This distinction is aptly illustrated in the present case. In addition to the general denial the defendant specially pleaded that plaintiff, with full knowledge of all the facts, ratified and affirmed the trade by executing a deed of trust upon the property conveyed him by defendant Laura Koppe in consideration of his conveyance to her of his interest in the estate. Upon this issue the burden was upon the defendant to establish by a preponderance of the evidence all of the facts necessary to show the ratification, and the court properly so charged the jury.

The rule that when the defendant seeks to defeat the *prima facie* case made by the plaintiff by evidence tending to show that some fact necessary to establish such *prima facie* case is not true, that the burden does not rest upon him to establish the non-existence of such fact by a preponderance of the evidence, but in such case, unless the jury find from a preponderance of all the evidence that the facts necessary to establish plaintiff's right to recover are true, they should find for the defendant, is firmly fixed by the decisions of our Supreme Court, and it is therefore unnecessary to ascertain what the rule is in other jurisdictions. The leading case upon this subject is that of Clark v. Hills, 67 Texas, 141. This case has been uniformly followed and approved by the Supreme Court. St. Louis, T. & A. Ry. Co. v. Burns, 71 Texas, 481; Scott v. Pettigrew, 72 Texas, 329; Jester v. Steiner, 86 Texas, 419.

The case of Gulf, C. & S. F. Ry. Co. v. Johnson, 92 Texas, 591, is not in conflict with the views above expressed. While the charge approved in that case instructed the jury that if they found certain facts alleged by the plaintiff to be true, that they constituted a *prima facie* case of negligence against the railroad, "and in the absence of rebut-

ting evidence sufficient to overcome such *prima facie* case" the defendant would be liable, the jury were further told in effect that to find for the plaintiff they must find from the evidence that the rebuttal testimony offered by the defendant was not true. The court, in approving this charge, expressly holds that it did not shift the burden of proof from the plaintiff to the defendant. This certainly can not be said of the charge complained of in this case.

This error in the charge would only be harmless in a case in which there was no conflict in the evidence upon the issue so erroneously submitted, and we can not say that the undisputed evidence in this case shows that the consideration paid plaintiff by the defendant was so inadequate as to make the transaction fraudulent, and the appellee does not so contend.

Upon the issue of ratification pleaded by the defendants, the court instructed the jury as follows:

"Upon the defendant's plea of ratification, you are instructed that if you believe from the evidence that at the time and under the circumstances when plaintiff made and executed his deed of trust to A. G. Board, plaintiff was fully advised of his interest which he had sold by deed of February 26, 1906, and was fully advised of the existence of the fraud perpetrated by defendants, or either of them, upon him, if any such you have found under any preceding paragraph of this charge, and knew and had sufficient capacity to understand the wrong done him, if he had been wronged, and he knew he was entitled to relief and the relief to which he was entitled, you will find your verdict in this case for the defendants against the cancellation of the deed, even though you should find that they had originally defrauded plaintiff; and unless you so find that said mortgage was executed with full knowledge of all the facts and circumstances affecting plaintiff's rights in his deed of February 26, 1906, and that he knew that in executing his said mortgage he was ratifying the previous transaction, you will disregard the evidence as to the execution of the said mortgage and the circumstances connected therewith, and if you have found under the other paragraphs of this charge that the deeds of February 26, 1906, should be canceled and said transaction set aside, you will return your verdict for the plaintiff accordingly."

This charge is assailed upon the following grounds:

"(a) It requires the jury to believe that the plaintiff knew the value of the interest that he sold and the existence of the fraud perpetrated upon him, and also the relief to which he was entitled.

"(b) Said charge also required the jury to believe the plaintiff knew, by the execution of the mortgage, he was ratifying the transaction with Mrs. Koppe; whereas, the relief to which the plaintiff was entitled, and whether his acts amounted to a ratification or not, were questions of law, and did not depend upon plaintiff's knowledge or intention."

The assignment complaining of this error in the charge can not be sustained, because it does not appear from the statement thereunder that the plaintiff knew of the fraud, if any was perpetrated upon him, at the time he executed the mortgage. The statement made by appellee in answer to the assignment tends to show that he had no such

knowledge at the time the mortgage was executed. Upon this state of the record the issue of ratification is not raised, and any error in the charge on that issue would not be prejudicial to the defendants.

In view of another trial it is necessary that we pass upon the questions presented by the assignment. We think each of the objections to the charge urged by appellant is valid. If, with a full knowledge and understanding of all the facts, appellee treated the property received by him as his own and appropriated it to his use and benefit by executing a mortgage or deed of trust thereon, such acts would constitute a ratification regardless of whether he knew specifically what his legal remedies were, and regardless of whether he knew that the execution of the mortgage would be a ratification of the transaction. It is not alleged that appellant was of insufficient mental capacity to understand the nature and consequence of his acts. All that is claimed in the petition is that his mind was wanting in "intelligence, judgment and experience qualifying him to conduct a business transaction, that he is wanting in shrewdness or capacity required to form a correct idea of the value of money or property, and that his mind is dwarfed and undeveloped." Neither the pleading nor evidence show plaintiff to be so deficient in mental capacity as to relieve him from the operation of the general rule that ignorance of the law excuses no one. The doctrine of ratification of a contract obtained by fraud is thus stated by Mr. Pomeroy:

"Where a party originally had a right of defense or of action to defeat or set aside a transaction on the ground of actual or constructive fraud, he may lose such remedial right by a subsequent confirmation, by acquiescence, and even by mere delay or laches." 2 Pom., Eq. Jur., p. 964.

Treating of this subject of ratification by acquiescence, the author says:

"A second mode by which the remedial right may be destroyed, and the transaction rendered unimpeachable, is acquiescence. The term 'acquiescence' is sometimes used improperly. It differs from confirmation on one side, and from mere delay on the other. While confirmation implies a deliberate act intended to renew and ratify a transaction known to be voidable, acquiescence is some act not deliberately intended to ratify a former transaction known to be voidable, but recognizing the transaction as existing, and intended, in some extent at least, to carry it into effect, and to obtain or claim the benefits resulting from it. The theory of the doctrine is that a party, having thus recognized a contract as existing, and having done something to carry it into effect and to obtain or claim its benefits, although perhaps only to a partial extent, and having thus taken his chances, can not afterwards be suffered to repudiate the transaction and allege its voidable nature. It follows that mere delay, mere suffering time to elapse without doing anything, is not acquiescence, although it may be and often is strong evidence of an acquiescence; and it may be and often is a distinct ground for refusing equitable relief, either affirmative or defensive. As acquiescence is thus a recognition of and consent to the contract or other transaction as existing, the requisites to its being effective as a bar are: knowledge or notice of the transaction

itself, knowledge of the party's own rights, absence of all undue influence or restraint and consequent freedom of action; a conscious intention to ratify the transaction, however, is not an essential element. When a party with full knowledge, or at least with sufficient notice or means of knowledge, of his rights and of all the material facts, freely does what amounts to a recognition of the transaction as existing, or acts in a manner inconsistent with its repudiation, or lies by for a considerable time and knowingly permits the other party to deal with the subject under the belief that the transaction has been recognized, or freely abstains for a considerable length of time from impeaching it, so that the other party is thereby reasonably induced to suppose that it is recognized, there is acquiescence, and the transaction, although originally impeachable, becomes unimpeachable in equity." 2 Pom., Eq. Jur., par. 965.

The question as to whether the plaintiff was defrauded in the transaction which he seeks to set aside could only be determined by an ascertainment of the value of the property conveyed and of that received by him, and in the ascertainment of this only the market value of the property at the time of the transaction, if it had a market value at that time, should be considered. This would be the rule in all cases of this character, but it is specially necessary that this rule should be applied in this case, because the undisputed evidence shows that at the time the transaction occurred the Koppe estate was largely indebted to various persons, and the only fair method of ascertaining the value of plaintiff's equity in said estate would be to find the excess, if any, in the market value of the estate over and above its indebtedness. This rule was generally recognized and enforced upon the trial of the case and both parties introduced a number of witnesses who testified as to what was the market value of the property of the estate at the time the transaction complained of occurred. The fact that the property had a market value at that time was fully established by the testimony of numerous witnesses introduced by both sides. Such being the state of the evidence upon this issue, the trial court, over the objection of the defendants that testimony as to the intrinsic value of the property was not admissible, permitted the plaintiff's attorney to introduce the following testimony:

Q. "Now, what was the intrinsic value in February, 1906, of that Koppe plantation in Burleson County?"

To which question defendants thereupon in open court objected on the ground that any evidence as to the intrinsic value was immaterial and irrelevant to any of the issues in the case, and because plaintiff, having established that there was a market value for said land, was limited to proof of market value, which objections were overruled, and the following testimony was by the court allowed to be introduced:

Q. "What was the intrinsic value of it—not with reference to your knowing of any sales; just state what it was worth according to your idea."

A. 'About $30 per acre."

The court erred in overruling the objection to this testimony and the assignment complaining of such ruling should be sustained.

It was also error to admit testimony as to the value of other Brazos

river lands not belonging to the Koppe estate, unless such lands were shown to be of the same character and were in the same immediate neighborhood, and the surroundings and conditions of both were substantially identical, and the testimony of the witness Kennedy as to the value of land situated eighteen or twenty miles from the lands of the Koppe estate, and not shown to have been substantially identical in class, conditions and surroundings, should not have been admitted. Upon this issue as to the value of the property the question to be determined was its value at the very time of the transaction, and the charge requested by the defendants so instructing the jury should have been given.

In support of the allegations of plaintiff's mental weakness, ignorance and want of business capacity before set out, he introduced a number of witnesses who testified in substance that they had known him for a long time, had been with him often, conversed with him on many subjects, and some of them had known of trades made by him, and that from their knowledge of plaintiff thus obtained, in their opinion he was weak-minded, wanting in business capacity, and had no appreciation of the value of money or property. All this testimony was objected to by the defendants on the grounds that the witnesses had not stated sufficient facts upon which their opinion was based to authorize them to express an opinion upon plaintiff's mental capacity, and that even if the facts stated were a sufficient basis of their opinion, such opinion was a conclusion of law and fact, and was therefore inadmissible.

We do not think these objections to the testimony should be sustained. The plaintiff does not seek to avoid the contract upon the grounds of mental incapacity, and as we understand the petition the allegations of mental weakness, ignorance and want of business capacity are only auxiliary to the allegation that he entirely trusted and relied upon the defendant, Laura Koppe, to look after and protect his interest in his father's estate, and that this trust and confidence, which was largely superinduced by plaintiff's mental unfitness for the conduct of large business transactions such as the management of his father's estate, was abused and taken advantage of by the defendant in the transaction complained of in the petition. We think that in support of these allegations the evidence objected to was admissible.

The condition of mind alleged in the petition could best be shown by the opinion of those whose intimacy with plaintiff, with his habits of life, thought and conversation, would enable them to form a correct opinion of the degree of his intelligence and his mental powers, and the opinion of such witnesses is not inadmissible because they fail to state specifically and in detail the acts of the plaintiff and conversations had with him upon which their opinions are based.

That a non-expert witness may give his opinion upon a question of this character, when the facts upon which he bases his opinion are stated, is well settled. Garrison v. Blanton, 48 Texas, 299; Cockrill v. Cox, 65 Texas, 669; Field v. Field, 39 Texas Civ. App., 1; Wells v. Houston, 29 Texas Civ. App., 617; Brown v. Mitchell, 88 Texas, 350; Houston & T. C. Ry. Co. v. Roberts, 101 Texas, 418.

In the two cases last cited the distinction is shown between the opinion of a witness involving a conclusion of law and one which is only a fact conclusion, and it is held that it is not competent for a witness to give his opinion when such opinion involves a legal conclusion, such as the capacity to make a will or a contract, or as to what would be a reasonable time for a railroad company to transport stock from the place of shipment to the place of destination, because such question is a mixed question of law and fact and the very question for the jury, to be determined by them under the instruction of the court.

The evidence before mentioned does not come under the rule announced in these cases, and is not subject to the objection that the opinion of the witness involves a legal conclusion. There was testimony introduced, however, which is obnoxious to this rule. One or two of the witnesses were permitted to state that the plaintiff did not in their opinion have sufficient mental capacity to fully understand the transaction complained of. This testimony was, we think, inadmissible under the rule announced in the cases last cited.

The trial court did not err in refusing to instruct the jury that if plaintiff, in making the trade with the defendant, was influenced by and acted on the advice of his friend, Mr. Milton Parker, with whom he consulted before concluding the transaction, they should find for the defendants. If the plaintiff trusted and relied upon the defendant as claimed by him, the fact that he consulted his friend, Mr. Parker, before concluding the trade, and was also influenced by him in accepting defendant's offer, would not defeat his right to recover. He is not required to show that he relied entirely and solely upon the representations of the defendant. If the relations of trust and confidence existed between him and defendant as alleged, and that confidence was abused and plaintiff defrauded, it is no defense to this suit to say that plaintiff consulted others as to the advisability of the trade and was to some extent influenced by their advice. In order to relieve the defendant the proof must show the relation of trust and confidence did not exist between plaintiff and herself, and that plaintiff did not rely upon her representations. We think the charge given by the court upon this issue was correct and the requested charge was properly refused.

We have not discussed all of the assignments of error, because to do so would serve no useful purpose and would greatly add to the length of this opinion. What we have said disposes of all the material questions presented. If any error is shown which has not been discussed in this opinion it is immaterial, and not such as is likely to occur upon another trial.

For the error before pointed out the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*