BURTON LUMBER CORPORATION V. CITY OF HOUSTON ET AL.

Decided February 25, 1907.

**1.—Eminent Domain—Distinction Between Taking and Damaging.**

If private property is actually taken for public use the owner must be compensated therefor, and no benefit which the owner may receive from the public use to which his property is subjected can be set off against the value of the property so taken. A different rule applies where the dominion of the owner over the property is not invaded but the property is damaged by the construction and maintenance of public works or ways, and in such case the special benefits to the owner's property accruing from the public improvement can be offset against any damage caused thereto by such improvement.

**2.—Damage to Property—Pleading.**

Where in suit for damage to a block of ground consisting of several lots by the construction of a tunnel in the street the plaintiff's petition treats his property as a whole and damages are asked in a lump sum for injury to the entire property, and the evidence showed that the entire property was used for one purpose it was proper for the court to submit to the jury the issue of damage to the property as an entirety, although one of the lots in the block may have been damaged more than the others.

**3.—Closing Street—Ordinance—Cause of Action.**

The mere passage of an ordinance authorizing the closing of a street

would not give a cause of action for damage to property abutting on such street. Such cause of action could only arise when the street was in fact closed or discontinued; and the fact that the street was made narrower would not be sufficient, provided a thoroughfare was left.

**4.—Charge—Burden of Proof.**

While a charge upon the burden of proof may not have been required in a given case, still where it appears from the charge as a whole that the jury could not have been misled by it it is not reversible error.

**5.—Value of Property—Rendition for Taxation.**

Renditions of property for taxes when made by the owner or by his authority or acquiesced in by him are admissible in evidence as a circumstance tending to show the value of the property at the time the rendition was made.

**6.—Street Improvement—Public Necessity.**

The fact that certain street improvements are a public necessity will not relieve the parties responsible from liability for injury thereby caused to private property.

Appeal from the District Court of Harris County. Tried below before Hon. Norman G. Kittrell.

*Hogg, Watkins & Jones,* for appellant.—Where railroad companies and a city take and damage property in the construction of a tunnel under the tracks of the railroads, testimony of a witness that the benefits from the tunnel offset the damages caused by its construction is inadmissible, and the admission of such testimony over objection is reversible error. Gulf, C. & S. F. Ry. v. Fuller, 63 Texas, 472, 473; Morrow v. St. Louis, A. & T. Ry., 81 Texas, 406; City of Dallas v. Kahn, 9 Texas Civ. App., 25, 26; City of Houston v. Bartels, 82 S. W. Rep., 324; Cole v. St. Louis, 34 S. W. Rep., 471; Hickman v. City of Kansas, 23 Law Rep. Ann., 663; Spencer v. Metropolitan St. Ry., 22 Law Rep. Ann., 672; Smith Mun. Cor., sec. 1220, p. 1219; Elliot Roads and Streets, sec. 246; 10 Am. & Eng. Enc. Law, pp. 1176, 1177.

Where a city closes a street and grants such street to railroad companies, the abutting property owner is entitled to recover damages, because of such taking of his title to the street. Elliot on Roads and Streets, sec. 204.

Where damages are alleged to all of several lots and some of the testimony is to the effect that a portion only of the lots are damaged, a charge to the jury, that if they believe plaintiff's property, describing all of the lots, were damaged, to find for the plaintiff, misled the jury, and required a finding that all of plaintiff's property should be damaged before a recovery could be had. Stooksbury v. Swan, 85 Texas, 566; Texas & Pac. Ry. v. Geiger, 79 Texas, 13-21; Western Union Telegraph Co. v. Bennett, 21 S. W. Rep., 699.

A tax rendition which purports only to give a correct list of property, without any statement of value by the party rendering, is inadmissible on the trial of an issue as to the fact and extent of the damage to the property. McLane v. Paschal, 74 Texas, 26.

*W. H. Wilson, T. H. Stone* and *T. C. Ford,* for appellee City of Houston.

*John M. King* and *Wilson & Dabney,* for appellee I. & G. N. Ry. Co.

*Baker, Botts, Parker & Garwood,* for appellee G. H. & H. Ry. Co.

PLEASANTS, ASSOCIATE JUSTICE.—This suit was brought by appellant against the city of Houston, the International & Great Northern Railway Company, and the Galveston, Houston & Henderson Railroad Company, to recover damages for alleged injury to property of plaintiff situate and abutting upon Preston Street in said city, caused by the construction and maintenance by the defendants of a tunnel and its approaches in that portion of said street adjacent to plaintiff's property.

The material allegations of plaintiff's petition are thus summarized in appellant's brief:

The plaintiff alleged substantially that said property fronted 250 feet on Preston Street and 100 feet on each St. Charles and Dowling Streets, and that said streets were, and had been for a long time prior to the injuries complained of, public streets, so recognized generally by the city and public, and shown on the recognized and adopted maps of said city. That prior to the construction of said tunnel and approaches it had ready and convenient access from said Preston and St. Charles Streets, to and with the Harrisburg Road, Buffalo Street, and the continuation of St. Charles Street to Congress Avenue, all of which were public streets, and had been for many years. That said tunnel and approaches thereto were constructed and excavated by the defendant railroad companies, under and by virtue of the authority, power and orders granted and contained in an ordinance duly and regularly passed by the city of Houston on or about November 30, 1903 (the title and substantial provisions of which were set out), and in conjunction with and under the supervision of the city of Houston, and under the general management, direction and control of all of the defendants.

That the tunnel and approaches thereto constructed and excavated was an underground tunnel, dug and excavated in Preston Street, the approach commencing in said street, near Dowling Street, and gradually descending to a great depth, where the tunnel proper was reached under the tracks of the defendant railroad companies at their intersection with Preston Street, and passed under said tracks to the approaches on the other side, there ascending to the street levels, one on Buffalo Street and one on the Harrisburg Road. That in front of the plaintiff's property, along the bank of the approach to the tunnel, was constructed and built a fence, and that no provision was made in the construction of said tunnel for access from Preston and St. Charles Streets to the continuation of St. Charles Street to Congress Avenue, nor for access from Preston and St. Charles Streets in front of plaintiff's property with Buffalo Street and the Harrisburg Road, except by coming down Preston Street to or about Dowling Street, and there entering the tunnel. That Preston Street has been so narrowed by the construction and excavation of said tunnel as to make the plaintiff's property thereon inaccessible, and to greatly interfere with the ingress and egress thereto and therefrom. That prior thereto plaintiff had a wide, commodious street, of a width of about 80 feet, in front thereof, but that it now has only a narrow strip of land in front of its said property on Preston Street, available for street

purposes, which is wholly insufficient and inadequate. That defendants had fenced Preston Street at its intersection with their railroad tracks and stopped travel and traffic thereover and closed same to public travel.

All of the defendants answered by general denials, and the defendant railroad companies specially pleaded that the construction of the tunnel had increased the value of plaintiff's property. Other special pleas were presented by the defendants, the nature of which it is unnecessary to here state.

A trial by jury in the court below resulted in a verdict and judgment in favor of all the defendants.

The evidence shows that plaintiff is the owner of property described in the petition, being lots three to eleven inclusive in block 229, south side of Buffalo Bayou in the city of Houston. This property has been used by appellant for a number of years as a lumber yard whereon it has conducted its business of lumber dealer. The location of the property, the tracks of defendant railways, the tunnel and the streets mentioned in the petition is shown by the following plat:

The tunnel was commenced in 1903 and finished in January, 1905. It was constructed by the defendant railway companies under an ordinance of the city of Houston, authorizing said defendants to construct a tunnel under their railroad tracks at the conjunction of Preston Avenue

with Buffalo Street and Harrisburg Road.  The ordinance provides that the cost of construction of the tunnel and its approaches shall be borne by the railway companies, but the city should share the cost of its maintenance.  It also released to the railway companies the surface way over the railroad tracks which the city had theretofore acquired and maintained, and authorized the railway companies to inclose same.  It further provided that said tunnel and its approaches should be constructed in accordance with plans and specifications prepared by the city engineer and under the joint supervision of said engineer and the engineer of the railway companies.

Plaintiff's general manager, D. A. Hagerman, testified:  "That St. Charles Street lies east of block 229; that prior to the construction of the tunnel, a man could travel on St. Charles Street in a northerly direction across Preston Street from the eastern side of block 229 to Congress Street, and that before the tunnel was built there was no obstruction to get from St. Charles Street and Preston Street to Congress Street; that if he wants to get to St. Charles Street now, from Congress, or to the extension of St. Charles that runs around into Congress, he has to go through the lumber yard or around the narrow piece of street left just north of block 229.  That to get from St. Charles Street to the I. & G. N. depot, as the situation now is, he has to go out through the yard to Dowling Street, or to the narrow piece of street immediately north of our property to Dowling, on Dowling to Congress, and from there to depot.  That the tunnel was completed some time in January, 1905.  That the Preston Avenue approach to the tunnel begins just to the east of the intersection of Dowling and Preston Streets, and it is about 40 feet from the property line of the block to the railing.  That the tunnel descends at quite a grade, and when it gets under the tracks it is about 15 feet deep, and after it runs under the tracks, one approach goes out on the Harrisburg Road and the other on Buffalo Street, and there is now no continuation of Preston Street to the Harrisburg Road, except through the tunnel.  That before the tunnel was built we could get from Preston Street onto the Harrisburg Road by passing over the railroad tracks.  That before the tunnel was built a man traveling on the Harrisburg Road up Preston Avenue could get near our office, but now he has to come through the tunnel down to Dowling, and pass back on Preston Avenue.  That the condition of the strip lying north of our property, between it and the tunnel, in rainy weather is in a very bad condition and impassable for heavy loads.  That there is no bridge across the tunnel at St. Charles Street for vehicles.  That the street across the I. & G. N. tracks has been fenced since the construction of the tunnel, and is now closed, and can not be driven over by a vehicle."

On cross-examination he testified:  "That the usual method of travel to his property was out Congress Avenue to I. & G. N. depot, upon which there was a good asphalt pavement, and from there on a block pavement to Preston Street, and across to St. Charles.  That St. Charles Street was not gravelled until we did it in front of our property; that Dowling Street was not gravelled until the latter part of 1905.  That before the tunnel was put in lots 8, 9 and 10 were more accessible for plaintiff's business than now; that it had a better way to get in than now; it went in over on St. Charles Street.  That the width of Preston Street between

plaintiff's property line and the railing of the tunnel in about 20 feet of the intersection of Dowling is 42 feet; at St. Charles about 47 feet; that the sidewalk in front of the plaintiff's property on Preston Avenue from the property line to the gutter is 11 feet 6 inches."

On redirect, he testified: "When lumber shipped us is transferred to I. & G. N. tracks, it is stopped east of the tunnel along the Harrisburg road, and is loaded on the wagons, and comes out through the tunnel, out on Dowling, and gets from there to our place of business; that the longest timber handled by us goes up to 38 or 40 feet, and when we are handling such timber it is not easy to turn in a short space; with 24 foot timber it is hard to turn; we can not handle 24 foot lumber as easily now as before the tunnel was built."

On recross, he testified: "In handling long sticks of timber, it is harder turning out of the approaches, and is a hard pull up the approach, and before we came right across there (Harrisburg Road to St. Charles Street), and came into the yard."

On redirect, he testified: "When we formerly came from down the Harrisburg road with lumber we only had to make half a turn, and now we have to turn clear around. Lot 10 fronts 100 feet on Preston, and is not as accessible as it was before."

Three or four witnesses testified that the construction and maintenance of the tunnel has greatly decreased the value of plaintiff's property, the amount of damage so sustained by plaintiff as fixed by said witnesses was from $3,900 to $5,000.

Five or six witnesses testified for defendants, that plaintiff's property was not damaged, but its value was increased by the construction of the tunnel. One of these witnesses stated, however, that he could not say that lot 5 of plaintiff's property was not damaged, but in his opinion the value of the property as a whole has not been diminished.

Our conclusion is that the evidence sustains the finding of the jury that the value of the property has not been decreased by the construction and maintenance of the tunnel.

The first assignment of error is as follows: "The court erred, to the prejudice of the plaintiff, in allowing the defendant's witness, David Hannah, over plaintiff's objection, to answer, 'I would consider that the advantages derived from the tunnel being there would offset any damage there had been to the property,' in answer to the following question, 'Looking at the whole improvements and the whole property, not at lot number five (5) alone, but the whole thing, has or has there not been any compensation as against any diminution in value brought about by these improvements?', the plaintiff having objected to said question and the answer sought, that there was no question of an offset to the building of the tunnel by any of the defendants in this case, and that the question and the answer sought thereby were and would be immaterial, incompetent and irrelevant."

The first proposition advanced under this assignment is, "Where railroad companies take and damage property in the construction of a tunnel under the tracks of the railroads, testimony of a witness that benefits from the tunnel offset the damages is inadmissible and the admission of such testimony over objection is reversible error." This proposition is not sound because it makes no distinction between the taking of property

and damage to property. If property is actually taken for public use the owner must be compensated therefor, and no benefit which the owner may receive from the public use to which his property is subjected can be set off against the value of the property so taken. A different rule applies where the dominion of the owner over the property is not invaded, but the property is damaged by the construction and maintenance of public works or ways, and in such case the special benefits to the owner's property accruing from the public improvement can be offset against any damage caused thereto by such improvement. This distinction between taking and damaging property was pointed out in the case of Settegast v. Railway Co., 12 Texas Ct. Rep., 539, and was the basis of the judgment of this court affirming the judgment of the trial court. A writ of error in that case was denied by the Supreme Court and the opinion therein stands as authority on this point.

The Texas cases cited by appellant do not support its proposition, as in all of them the right of the defendant to offset damages to abutting property caused by the lawful improvement of a street by a city or its use for right of way by a railroad company by benefits shown to have accrued to the property by such public improvement or use, is expressly recognized and enforced. (Gulf, C. & S. F. Ry. Co. v. Fuller, 63 Texas, 472; City of Dallas v. Kahn, 9 Texas Civ. App., 25.) Authorities sustaining the proposition that in suits of this character the benefits accruing to the property should be considered in estimating the damages are too numerous to require further citation.

There is no contention that the evidence shows any actual invasion by defendants of plaintiff's property. If it be conceded that plaintiff, as an abutting owner, is at least prima facie the owner of the fee in a portion of the street, such ownership would extend only to the centre of the street, plaintiff not being the owner of the abutting property on both sides of the street, and the undisputed evidence shows that the improvements complained of do not encroach upon that half of the street lying next to plaintiff's property.

The second proposition under this assignment is as follows: "The benefits (advantages) sought to be offset against the damages to plaintiff's property were not pleaded and were not shown to have been special and peculiar to it and not received in common by the property owners in the community where plaintiff's property was situate." As shown in the statement of the pleadings before set out the defendant railways pleaded that the construction of the tunnel had enhanced the value of plaintiff's property, and under this allegation they were entitled to show such enhancement in value in offset to any damages done the property by the construction of the tunnel. The objection that the benefit to the property is not shown to have been peculiar to it, if sound, was not made in the court below and therefore can not be entertained by this court. It further appears from the record that other testimony of this character was introduced without objection on the part of plaintiffs and for that reason any error in the admission of the testimony complained of by the assignment was immaterial and harmless.

The second assignment predicates error upon the refusal of the court to charge the jury, at the request of plaintiff, that if they believed from

the evidence that plaintiff's property "or any part thereof" was damaged they should find for plaintiff the amount of such damage. The court charged the jury that if they believed that plaintiff's property described in the petition as lots 3, 4, 5, 8, 9, 10 and 11 in block 229 was damaged they should find for plaintiff the amount of such damage. Appellant contends that there was more evidence as to damage to lot 5 than to the remaining lots and that it was entitled to have the question of damage to each lot considered separately by the jury. We do not think this contention should be sustained. The petition treats the property as a whole and damages are asked in a lump sum for injury to the entire property. It was all used together as a lumber yard and as one piece of property and the statement in the petition of the numbers of the lots of which the property was composed does not make the suit one for damages to each lot considered separately. Under the charge of the court plaintiff would be entitled to recover damages to any part of the property provided the benefit to the whole did not offset such damage and we think under the allegations of the petition this was a correct charge.

The third assignment assails the verdict on the ground that it is contrary to the evidence. This assignment has been disposed of by our fact conclusion that the evidence supports the finding of the jury that the construction of the tunnel has not decreased the value of plaintiff's property.

The fourth assignment assails the verdict as being unsupported by the evidence in that the ordinance of the city of Houston under which the tunnel was constructed discontinues the use of Preston Street from the beginning of the approach to the tunnel near Dowling Street to the tracks of appellee railway companies and releases and relinquishes to said appellees for their exclusive use and benefit all said portion of said street, thus taking from plaintiff its right to the use of any portion of said street in front of its property.

The section of the ordinance upon which this assignment is based is as follows:

"That whenever said tunnel and approaches shall be constructed and completed, according to the plans and specifications, Preston Avenue, Buffalo Street and the Harrisburg Road, from the beginning of the approaches on either side as thoroughfares, and travel, or right of travel, from and across the tracks of said railroad companies, at the intersection thereof with said Preston Avenue and the Harrisburg Road, shall be discontinued and abandoned, and travel thereon shall thereafter be unlawful, and henceforth such thoroughfares between the points designated, and all travel, or right of travel, along and over said thoroughfares, at their intersection with the tracks of said railroad companies, shall be through and along said tunnel and the approaches exclusively; and all claim of the city of Houston in or to said Preston Avenue, Buffalo Street and the Harrisburg Road, between the points above designated, and any other along or under which said tunnel and approaches may be constructed, as to the surface portion of said streets between said points, is hereby relinquished and released to the said railroad companies, for the sole and exclusive benefit of them, their successors and assigns; and the said railroad companies shall have the right, and they are hereby authorized and empowered, upon the construction and completion of said

tunnel and approaches according to plans and specifications, to lay and construct all such additional tracks across said Preston Avenue and the Harrisburg road above said tunnel and approaches at the intersection of said avenue and road with the tracks of said companies, as they may desire."

It may be conceded that this ordinance by its terms does release to the defendant railways all of the portion of Preston Avenue described in the assignment, but the undisputed evidence shows that said portion of the street has not been discontinued or closed and along the entire front of plaintiff's property there is now a street of over forty feet in width. The mere passage of the ordinance authorizing the closing of the street would not give a cause of action for damages to plaintiff's property based on the closing of the street. Such cause of action could only arise when the street was in fact closed or discontinued.

The fifth and sixth assignments present the same question in another form as that raised by the second assignment and for the reasons before stated they can not be sustained.

The seventh assignment complains of the charge on the ground that it was error to instruct the jury "that the burden of proof is on plaintiff to prove the facts on which it bases its right to recover." It may be that under the rule announced in Stooksbury v. Swan, 85 Texas, 565, a charge upon the burden of proof was not required in this case, but we do not think the giving of such charge could have misled the jury. From the charge as a whole the jury must have understood that the only issue submitted to them was whether plaintiff's property had been damaged as alleged and that this issue should be determined by the preponderance of the evidence.

The tenth assignment complains of the ruling of the court in admitting in evidence, over the objection of plaintiff, the renditions of its property for taxes made by it to the city of Houston for the year 1904. The proposition under this assignment is, in substance, that a tax rendition which purports only to give a correct list of property without any statement of value by the party rendering is inadmissible as against such party on the issue of the value of the property. The rendition was made by the general manager of appellant, and while the valuation of the property is not sworn to by him there is nothing on the face of the record of said rendition to indicate that the valuation was not made by him, or if made by the assessor, that he did not acquiesce therein, and under the rule announced in Boyer v. St. Louis, S. F. & T. Ry., 97 Texas, 110, it was admissible in evidence as an admission by plaintiff as to the value of the property at the time the rendition was made. Of course such admission was not binding on plaintiff, and could only be admitted as a circumstance tending to show the value of the property.

The eleventh assignment of error is as follows: "The court erred to the prejudice of the plaintiff, in refusing to give to the jury special charge number one (1), requested by the plaintiff, which was as follows: In this case you are charged that there is no dispute about the title of the Burton Lumber Corporation to the property described in its petition. You are further charged that said property fronting on Preston Street and St. Charles Street gave to the plaintiff, by reason of its ownership thereof, an easement in both Preston and St. Charles Streets, and the continuation of the latter, and a right to have the free and uninter-

rupted use of both streets as the same was laid out and used before the injuries complained of by plaintiff, and if you believe from the evidence that by reason of the construction and maintenance of the tunnel described in plaintiff's petition, plaintiff's easement to said streets, or either of them, or said continuation, has been taken or damaged, then, and in that event, the plaintiff would be entitled to recover damages from the defendants for such taking or injury, if any." The court did not err in refusing the requested charge. As before stated the damage to plaintiff's easement in the streets mentioned in the assignment was not a taking of property as that term is used in the constitutional provision requiring compensation for the taking or damage to private property when taken or damaged for public use or benefit. (Wootters v. City of Crockett, 33 S. W. Rep., 391.)

The court expressly told the jury in the main charge that if they found from the evidence that plaintiff's property was damaged as claimed by the construction of the tunnel and its approaches they should find for plaintiff the amount of such damages against all of the defendants. Having given this unqualified instruction it was unnecessary to further instruct the jury that the fact that the construction of the tunnel was a public necessity would not relieve the defendants of liability for any damage thereby caused to plaintiff's property, and there was no error in refusing the charge to this effect requested by the plaintiff, the refusal of which is complained of by the thirteenth assignment of error.

The seventeenth assignment complains of the following paragraph of the court's charge:

"You will determine the difference in the fair and reasonable market value of the property, if any, immediately before the work was done, and the same value immediately afterwards, and if you believe that the plaintiff's property suffered special damage by reason of the work that was done in building the tunnel and approaches, and was reduced in value, you will find for plaintiff to the extent of such damage; that is, to the extent of the difference, if any, between the market value of the property immediately before and immediately after the work was done, with interest at 6 percent from January 1, 1905, and you will not consider as an offset the general advance in values of property in the city or the general benefits accruing to property generally in that neighborhood." We do not think the jury would have understood from this charge that plaintiff could only recover damage peculiar to itself in the sense that if the property of others similarly situated as that of plaintiff's was also damaged plaintiff could not recover. At any rate the charge is not an affirmative misstatement of the law and in the absence of a request by the plaintiff for an instruction giving a fuller statement of plaintiff's right of recovery the error, if any, is not cause for reversal.

In what has been said we have disposed of all the material questions raised by appellant, and we shall not discuss the remaining assignments of error in detail. They have all been considered and in our opinion none of them should be sustained.

We think the judgment of the court below should be affirmed and it has been so ordered.

*Affirmed.*

Writ of error refused.